FILED

2016 JUL 19 PM 3:03

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2016 Grand Jury

| UNITED STATES OF AMERICA, | CR No. **CR16- 0499** |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1831: Economic Espionage; 22 U.S.C. §§ 2778(b)(2), (c), 22 C.F.R §§ 127.1(a), (e): Arms Export Control Act] |
| GREGORY ALLEN JUSTICE, | |
| Defendant. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Cleared Contractor A was a publicly traded corporation whose business focused on aerospace, including the manufacture of defense, space, and security systems.

2. Defendant GREGORY ALLEN JUSTICE ("defendant") was a citizen of the United States.

3. Defendant was a production engineer employed by Cleared Contractor A in Los Angeles County. Defendant worked under Cleared Contractor A's satellite systems program.

4. At Cleared Contractor A, defendant was assigned to a team working to build and test U.S. military satellites, including projects for the United States Air Force, the United States Navy, and National Aeronautics and Space Administration ("NASA").

5. During his employment at Cleared Contractor A, defendant worked on matters including: Wideband Global Satellite Communications ("WGS") system, also known as Wideband Gapfiller Satellite Communications; Global Positioning System ("GPS"); Tracking and Data Relay Satellite ("TDRS"); and Milstar Communication Satellite ("MILSTAR").

    a. The WGS system provided broadband communications connectivity for U.S. and allied warfighters around the world. WGS is the highest-capacity military communications system available to the U.S. Department of Defense.

    b. GPS is a worldwide timing and navigation system made up of 24 satellites orbiting some 12,000 miles above earth.

    c. TDRS are communication satellites utilized by NASA.

    d. MILSTAR is a military satellite program that has significant anti-jamming capabilities.

6. Certain aspects of the WGS, GPS, TDRS, and MILSTAR systems were considered trade secret information by Cleared Contractor A and were protected by Cleared Contractor A as confidential and proprietary information. Those trade secrets

existed in a single document and record at times, and also as compilations and collections of documents and files that related to an entire satellite and satellite system and to portions or components of a satellite or satellite system. These trade secrets, as that term is defined in Title 18, United States Code, Section 1839(3) and collectively referred to herein as the "Trade Secret Information," included the following:

| Item | Description |
| --- | --- |
| Trade Secret 1 | Plan to verify encryption and decryption functionality for communications with Cleared Contractor A's WGS satellites |
| Trade Secret 2 | Guidelines for running certain procedures used in testing the operation of Cleared Contractor A's WGS satellites on a specific testing platform |
| Trade Secret 3 | Plan for developing firmware that will be installed on a particular component of Cleared Contractor A's WGS satellites |
| Trade Secret 4 | Plan for testing the configuration of Cleared Contractor A's sensitive anti-jamming technology that it uses on its WGS satellites |

7. Between in or about February 2016 and in or about July 2016, defendant communicated with an under-cover law enforcement agent in Los Angeles County. Defendant communicated with the under-cover law enforcement agent in person and by telephone for the purpose of selling proprietary and trade secret information while intending and knowing that this conduct would benefit the Russian government and a Russian agent, and for the purpose of illegally exporting from the United States export-controlled sensitive satellite information without a license.

3

8. The Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA"), authorized the President of the United States to control the export of "defense articles" by designating those items which shall be considered as defense articles and by promulgating regulations for the import and export of such articles.

9. The term "defense article" is defined to mean "any item or technical data designated in § 121.1 of this subchapter. . . . This term includes technical data recorded or stored in any physical form, models, mockups or other items that reveal technical data directly relating to items designated in § 121.1 [the USML] of this subchapter." 22 C.F.R. § 120.6. The definition of the term "technical data" includes "information . . . which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles. This includes information in the form of blueprints, drawings, photographs, plans, instructions or documentation." 22 C.F.R. § 120.10(a).

10. Defense articles that were subject to such licensing requirements were designated on the United States Munitions List ("USML"). 22 C.F.R. § 121.1. Those designations were made by the United States Department of State ("Department of State") with the concurrence of the United States Department of Defense

("Department of Defense"). (22 U.S.C. § 2778(a)(1); 22 C.F.R. § 120.2.)

11. Category XV(f) of the USML includes information used for the operation of military satellites.

12. Category XV(f) of the USML also includes technical data related to spacecraft systems and associated equipment.

13. The AECA and its attendant regulations, the International Traffic in Arms Regulations, Title 22, Code of Federal Regulations, Parts 120-130 ("ITAR"), required a person to apply for and obtain an export license from the Directorate of Defense Trade Controls ("DDTC") of the Department of State before exporting from the United States defense articles, including technical data, by any means. (22 U.S.C. § 2778(b)(2); 22 C.F.R. §§ 120.1, 120.17.)

14. Trade Secret 1, Trade Secret 2, Trade Secret 3, and Trade Secret 4 each contained technical data listed on the USML under Category XV(f), and each therefore required a license to be exported from the United States to any other country.

15. At no time did defendant apply for, receive, or possess a license to export defense articles, including technical data, related to the counts described below.

16. The factual allegations in paragraphs 1 through 15 are incorporated in all counts of this Indictment by reference and are re-alleged as though fully set forth therein.

COUNT ONE

[18 U.S.C. § 1831(a)(4)]

The allegations set forth in paragraphs 1 through 15 of this Indictment are incorporated herein as if set forth in full.

On or about March 4, 2016, in Los Angeles County, within the Central District of California, defendant GREGORY ALLEN JUSTICE ("defendant"), intending and knowing that the offense would benefit a foreign government, instrumentality, and agent, namely, the Russian Federation and a person whom defendant believed was an agent of the Russian Federation, did knowingly attempt (1) to steal, appropriate, take, carry away, and conceal without authorization, and by fraud, artifice and deception obtain trade secrets, (2) without authorization copy, duplicate, download, replicate, transmit, deliver, send, communicate, and convey trade secrets, and (3) possess, knowing it to have been stolen and misappropriated, obtained, and converted without authorization, trade secrets, all in violation of Title 18, United States Code, Section 1831(a)(4). Those trade secrets were the Trade Secret Information and specifically the following materials, each owned by Cleared Contractor A:

| Item | Description |
|---|---|
| Trade Secret 1 | Plan to verify encryption and decryption functionality for communications with Cleared Contractor A's WGS satellites |
| Trade Secret 2 | Guidelines for running certain procedures used in testing the operation of Cleared Contractor A's WGS satellites on a specific testing platform |
| Trade Secret 3 | Plan for developing firmware that will be installed on a particular component of Cleared Contractor A's WGS satellites |
| Trade Secret 4 | Plan for testing the configuration of Cleared Contractor A's sensitive anti-jamming technology that it uses on its WGS satellites |

COUNT TWO

[22 U.S.C. §§ 2778(c);

22 C.F.R. §§ 121.1, 123.1, 127.1(a), (e)]

The allegations set forth in paragraphs 1 through 15 of this Indictment are incorporated herein as if set forth in full.

On or about March 4, 2016, in Los Angeles County, within the Central District of California, defendant GREGORY ALLEN JUSTICE ("defendant"), knowingly and willfully attempted to export, caused others to export, and aided, abetted, counseled, demanded, induced, procured, and permitted the export from the United States of the following defense articles without first having obtained from the DDTC a license or authorization to do so:

| Item | Description |
|---|---|
| Trade Secret 1 | Plan to verify encryption and decryption functionality for communications with Cleared Contractor A's WGS satellites |
| Trade Secret 2 | Guidelines for running certain procedures used in testing the operation of Cleared Contractor A's WGS satellites on a specific testing platform |
| Trade Secret 3 | Plan for developing firmware that will be installed on a particular component of Cleared Contractor A's WGS satellites |
| Trade Secret 4 | Plan for testing the configuration of Cleared Contractor A's sensitive anti-jamming technology that it uses on its WGS satellites |

A TRUE BILL

/S/
Foreperson

EILEEN M. DECKER
United States Attorney

*Patricia A. Donahue* (signature)

PATRICIA A. DONAHUE
Assistant United States Attorney
Chief, National Security Division

CHRISTOPHER GRIGG
Assistant United States Attorney
Chief, Terrorism and Export Crimes Section

ANTHONY J. LEWIS
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes
  Section

MELISSA MILLS
Assistant United States Attorney
Terrorism and Export Crimes Section