SANDRA R. BROWN
Acting United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
ANTHONY J. LEWIS (Cal. Bar No. 231825)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
MELISSA MILLS (Cal. Bar No. 248529)
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1786/0627
     Facsimile: (213) 894-7631
     E-mail:  anthony.lewis@usdoj.gov
              melissa.mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-499-GW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT GREGORY ALLEN JUSTICE |
| v. | |
| GREGORY ALLEN JUSTICE, | |
| Defendant. | |

1.    This constitutes the plea agreement between Gregory Allen Justice ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

     a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to both counts of the

indictment in <u>United States v. Gregory Allen Justice</u>, CR No. 16-499-GW, which charge defendant with violations of Title 18, United States Code, Section 1831(a)(4) (Attempting to Commit Economic Espionage) and Title 22, United States Code, Section 2778(b)(2), (c) (Attempting to Violate the Arms Export Control Act), and Title 22, Code of Federal Regulations, Sections 127.1(a), (e) (the International Traffic in Arms Regulations).

      b.   Not contest facts agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained in this agreement.

      d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

      g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

      h.   Make restitution in accordance with any order of restitution, and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

1            i.    Agree to and not oppose the imposition of the

2 following conditions of probation or supervised release:  that

3 defendant not seek or maintain a security clearance for the duration

4 any term of supervised release.

5                        THE USAO'S OBLIGATIONS

6      3.    The USAO agrees to:

7            a.    Not contest facts agreed to in this agreement.

8            b.    Abide by all agreements regarding sentencing contained

9 in this agreement.

10            c.    At the time of sentencing, provided that defendant

11 demonstrates an acceptance of responsibility for the offenses up to

12 and including the time of sentencing, recommend a two-level reduction

13 in the applicable Sentencing Guidelines offense level, pursuant to

14 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

15 additional one-level reduction if available under that section.

16            d.    Except for criminal tax violations (including

17 conspiracy to commit such violations chargeable under 18 U.S.C.

18 § 371), not further criminally prosecute defendant for:

19            i.    Additional violations of Title 18, United States

20 Code, Section 1831(a)(4) (Economic Espionage) and Title 22, United

21 States Code, Section 2778(b)(2), (c) (Arms Export Control Act), and

22 Title 22, Code of Federal Regulations, Sections 127.1(a), (e) (the

23 International Traffic in Arms Regulations) arising out of defendant's

24 conduct described in the agreed-to factual basis set forth in

25 paragraph 14 below and specifically for defendant's meetings with an

26 under-cover employee of the Federal Bureau of Investigation and

27 defendant's providing of materials to the under-cover employee on

28

1  February 19, 2016, March 4, 2016, April 8, 2016, May 12, 2016, and
2  July 7, 2016.

3          ii.  violations of Title 26, United States Code,
4  Sections 5861(a)-(d), (f), (i)-(j) for allegations that defendant
5  possessed in 2015 and/or 2016 of an unregistered firearm,
6  specifically two AR-15 firearms.

7          iii. violations of Title 21, United States Code,
8  Sections 841(a)(1), 841(f), 846, 331(t), 353(c)(3) for allegations
9  that in 2015 or 2016, defendant received, possessed, and distributed
10 either anectine, which is also known as succinylcholine chloride, or
11 gammahydroxybutyric acid lactone, which is also known as
12 gammabutyolactone or GBL.

13         iv.  Defendant understands that the USAO is free to
14 criminally prosecute defendant for any other unlawful past conduct or
15 any unlawful conduct that occurs after the date of this agreement.
16 Defendant understands that at the time of sentencing the Court may
17 consider the uncharged conduct in determining the applicable
18 Sentencing Guidelines range, the propriety and extent of any
19 departure from that range, and the sentence to be imposed after
20 consideration of the Sentencing Guidelines and all other relevant
21 factors under 18 U.S.C. § 3553(a).

22         e.   Not recommend a sentence of imprisonment above 87
23 months.  For purposes of this agreement, the low end of the
24 Sentencing Guidelines range is that defined by the Sentencing Table
25 in U.S.S.G. Chapter 5, Part A.

26                        NATURE OF THE OFFENSES
27     4.   Defendant understands that for defendant to be guilty of
28 the crime charged in count one, that is, attempted economic

4

1    espionage, in violation of Title 18, United States Code, Section
2    1831(a)(4), the following must be true:

3            a.    Defendant intended to (a) steal, (b) copy or (c)
4    possess trade secrets;

5            b.    Defendant knew or intended that the offense would
6    benefit a foreign government, foreign instrumentality, or foreign
7    agent; and

8            c.    Defendant engaged in conduct constituting a
9    substantial step toward commission of the crime that is in pursuit of
10   that intent.

11       5.    The elements of the offense that defendant attempted to
12   commit, economic espionage in violation of Title 18, United States
13   Code, Section 1831(a)(1)-(3), are the following:

14           a.    Defendant knowingly misappropriated information by
15   doing any of the following:

16               i.    steals, or without authorization appropriates,
17   takes, carries away, or conceals, or by fraud, artifice, or deception
18   obtains;

19               ii.   without authorization copies, duplicates,
20   downloads, replicates, transmits, delivers, sends, communicates, or
21   conveys;

22               iii. possesses, knowing the same to have been stolen
23   or appropriated, obtained, or converted without authorization;

24           b.    Defendant knew or believed this information was
25   proprietary and that he had no claim to it;

26           c.    The information was in fact a trade secret; and

27

28

                                        5

d.  Defendant knew or intended that the offense would benefit a foreign government, foreign instrumentality or foreign agent.

6.  Defendant understands that for defendant to be guilty of the crime charged in count two, that is, attempting to violate the Arms Export Control Act, in violation of Title 22, United States Code, Section 2778(b)(2), (c) (Attempting to Violate the Arms Export Control Act), and Title 22, Code of Federal Regulations, Sections 127.1(a), (e) (the International Traffic in Arms Regulations), the following must be true:

a.  Defendant intended to either export or to disclose technical data, i.e., information that was listed on the USML, to a foreign person;

b.  Defendant knew that it was illegal to do so; and

c.  Defendant took a substantial step toward actually disclosing the technical data.

7.  The elements of the offense that defendant attempted to commit, economic espionage in violation of Title 22, United States Code, Section 2778(b)(2), (c) (Attempting to Violate the Arms Export Control Act), and Title 22, Code of Federal Regulations, Sections 127.1(a), (e) (the International Traffic in Arms Regulations), are the following:

a.  Defendant disclosed information to a foreign national or exported information out of the United States by any means;

b.  The information was technical data, i.e., a defense article or related to a defense article listed on the USML;

c.  Defendant did not obtain a license from the Department of State, Directorate of Defense Trade Controls; and

1        d.    Defendant knew that exporting the defense article

2   without a license or authorization to do so was illegal.

3                              PENALTIES

4        8.    Defendant understands that the statutory maximum sentence

5   that the Court can impose for a violation of Title 18, United States

6   Code, Section 1831(a)(4) is:  15 years' imprisonment; a three-year

7   period of supervised release; a fine of $500,000 or twice the gross

8   gain or gross loss resulting from the offense, whichever is greatest;

9   and a mandatory special assessment of $100.

10       9.    Defendant understands that the statutory maximum sentence

11  that the Court can impose for a violation of Title 22, United States

12  Code, Section 2778(b)(2), (c), and Title 22, Code of Federal

13  Regulations, Sections 127.1(a), (e) is:  20 years' imprisonment; a

14  three-year period of supervised release; a fine of $1,000,000 or

15  twice the gross gain or gross loss resulting from the offense,

16  whichever is greatest; and a mandatory special assessment of $100.

17       10.   Defendant understands, therefore, that the total maximum

18  sentence for all offenses to which defendant is pleading guilty is:

19  35 years' imprisonment; a three-year period of supervised release; a

20  fine of $1,500,000 or twice the gross gain or gross loss resulting

21  from the offenses, whichever is greatest; and a mandatory special

22  assessment of $200.

23       11.   Defendant understands that supervised release is a period

24  of time following imprisonment during which defendant will be subject

25  to various restrictions and requirements.  Defendant understands that

26  if defendant violates one or more of the conditions of any supervised

27  release imposed, defendant may be returned to prison for all or part

28  of the term of supervised release authorized by statute for the

                                   7

1  offense that resulted in the term of supervised release, which could

2  result in defendant serving a total term of imprisonment greater than

3  the statutory maximum stated above.

4      12.  Defendant understands that, by pleading guilty, defendant

5  may be giving up valuable government benefits and valuable civic

6  rights, such as the right to vote, the right to possess a firearm,

7  the right to hold office, and the right to serve on a jury.

8  Defendant understands that once the court accepts defendant's guilty

9  plea, it will be a federal felony for defendant to possess a firearm

10 or ammunition.  Defendant understands that the conviction in this

11 case may also subject defendant to various other collateral

12 consequences, including but not limited to revocation of probation,

13 parole, or supervised release in another case and suspension or

14 revocation of a professional license.  Defendant understands that

15 unanticipated collateral consequences will not serve as grounds to

16 withdraw defendant's guilty plea.

17     13.  Defendant understands that, if defendant is not a United

18 States citizen, the felony conviction in this case may subject

19 defendant to: removal, also known as deportation, which may, under

20 some circumstances, be mandatory; denial of citizenship; and denial

21 of admission to the United States in the future.  The court cannot,

22 and defendant's attorney also may not be able to, advise defendant

23 fully regarding the immigration consequences of the felony conviction

24 in this case.  Defendant understands that unexpected immigration

25 consequences will not serve as grounds to withdraw defendant's guilty

26 plea.

27

28

8

FACTUAL BASIS

14.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

a.   Since 2000, defendant has worked as an engineer for a cleared defense contractor in the Central District of California ("Cleared Contractor A").  Defendant worked on Cleared Contractor A's military satellites for its customers that included the United States Air Force, the United States Navy, and the National Aeronautics and Space Administration.  The satellite programs on which defendant worked included Wideband Global Satellite Communications ("WGS") system, Global Positioning System ("GPS"), Geostationary Operational Environmental Satellites ("GOES"), Tracking and Data Relay Satellite ("TDRS"), and Milstar Communication Satellite ("MILSTAR").

b.   In the course of his employment, defendant had access to the following files:

i.   Trade Secret 1 contains the plan to verify encryption and decryption functionality for communications with Cleared Contractor A's WGS satellites.

ii.   Trade Secret 2 contains guidelines for running certain procedures used in testing the operation of Cleared Contractor A's WGS satellites on a specific testing platform.

1            iii. Trade Secret 3 is a plan for developing firmware

2    that will be installed on a particular component of Cleared

3    Contractor A's WGS satellites.  This is used to assure Cleared

4    Contractor A's customers that Cleared Contractor A has, and adheres

5    to, well-documented development procedures, which is critical in the

6    context of competitive bids for projects requiring complicated

7    firmware.  When the information in this plan is shared with

8    prospective government customers, it is done pursuant to a

9    proprietary information agreement requiring that confidentiality be

10   maintained.

11           iv.  Trade Secret 4 is a plan for testing the

12   configuration of Cleared Contractor A's sensitive anti-jamming

13   technology that it uses on its WGS satellites.

14           c.   Defendant, by virtue of his position as an engineer

15   working on military satellites, was granted access to Cleared

16   Contractor A's sensitive satellite information and technology,

17   including Trade Secrets 1-4, which were in fact trade secrets as

18   defined in Title 18, United States Code, Section 1839(3).  Cleared

19   Contractor A used multiple measures to maintain the confidentiality

20   of Trade Secrets 1-4 that defendant circumvented, avoided, or

21   disobeyed.  Those included the requirement of badge-controlled access

22   to Cleared Contractor A's physical facilities, requiring an employee

23   to present both his badge and his PIN to gain access to his computer

24   workstation, re-entering a PIN to access a database where certain of

25   the satellite information (including Trade Secrets #1-4) was stored,

26   periodic training regarding the proper handling of trade secrets and

27   intellectual property, and company-wide policies to which employees--

28   including defendant--agree to follow that require employees to

1  maintain the confidentiality of Cleared Contractor A's proprietary
2  information.  Trade Secrets 1-4 also had value to Cleared Contractor
3  A by virtue of not being known to the public or to competitors or
4  others who could obtain economic value from the information in Trade
5  Secrets 1-4, in particular value in the context of bidding against
6  other competitors for government satellite projects.  Trade Secrets
7  1-4 contained both substantive technical information as well as the
8  methods and procedures by which Cleared Contractor A approaches
9  design and other technical issues.

10             d.    Trade Secrets 1-4 were also on Category XV(f) of the
11  United States Munitions List, which made them subject to the
12  International Traffic in Arms Regulations (ITAR) and thus required a
13  license or authorization from the Department of State, Directorate of
14  Defense Trade Controls (DDTC) before they could be exported from the
15  United States or disclosed to foreign persons.  At no time did
16  defendant obtain a license for the export or disclosure of Trade
17  Secrets 1-4.

18             e.    Defendant has also undergone periodic training
19  regarding the proper handling of information that is subject to
20  export controls, including specifically on July 9, 2015, and knew
21  that exporting or disclosing to foreign persons of information
22  subject to the ITAR was illegal.

23             f.    First Meeting on February 17, 2016:  Defendant first
24  met with a person who he believed to be an agent of a Russian
25  intelligence service but who in fact was an under-cover employee
26  ("UCE") of the Federal Bureau of Investigation ("FBI").  All of
27  defendant's meetings with the UCE took place in Los Angeles County.
28  At the first meeting, the UCE advised that defendant was "very, very

1   important to the Russians," and inquired what defendant wanted and
2   expected.  defendant replied that his wife's medical care was
3   expensive and that he needed money.  Defendant told the UCE that he
4   worked at Cleared Contractor A on satellite programs, that he had
5   previously sent a schematic, and that he had "access to everything
6   for this program that's on our servers."  The UCE asked if certain
7   commercial information was available on the internet, and defendant
8   said that while limited information was available on the internet,
9   what he had access to was "considered trade secrets so none of that's
10  gunna be available."  Defendant also described the military
11  information to which he had access, and said: "Everything is ITAR.
12  Do you know ITAR?"  The UCE said he did.
13        g.   Defendant confirmed to the UCE that he "very much"
14  understood the security risks in what they were doing.  The UCE told
15  defendant that he would send defendant's information "back to Moscow
16  and they will review this and they will determine what they think
17  it's worth."
18        h.   Second Meeting on February 19, 2016:  Defendant met
19  again with the UCE on February 19, 2016.  Defendant told the UCE that
20  he had previously "phoned the consulate" and "contacted the Russian
21  Embassy."  Defendant also said that he had printed a schematic and
22  mailed it to a colonel in Washington, D.C.  At that time, he could
23  not travel to Washington, but now was a better time for him; thus, he
24  had "called the embassy again last week."  Defendant also asked the
25  UCE about his place in Russian intelligence services, and
26  specifically inquired as to whether the UCE was "in the FSB."  The
27  UCE stated that he was in a department under the SVR, which he
28  likened to the American CIA.  The UCE told defendant that the

12

1   "simplest way to explain it" was to refer to the television show "The
2   Americans," which defendant said he had seen.  Defendant then stated
3   that he had "a large debt" and "medical bills" that would only grow;
4   thus, he advised that "the best way is to let . . . your superiors
5   evaluate what I have and offer what you think is appropriate."

6          i.   Defendant gave the UCE a USB thumb drive containing
7   files defendant had transferred from Cleared Contractor A's computer
8   network containing what defendant described as Air Force satellite
9   information that could not be found on the internet.  Defendant also
10  described for the UCE the Wideband Global SatCom ("WGS") program.
11  Defendant further described the process to gain entry to classified
12  systems.

13         j.   In discussing their next meeting, defendant told the
14  UCE that he would not tell anyone.  The UCE gave defendant $500 in
15  cash.

16         k.   Third Meeting on March 4, 2016:  At this meeting,
17  defendant told the UCE that "I think it's important to what we're
18  doing, to avoid suspicion, to not deviate from my pattern."  In
19  discussing what programs to which defendant had access, defendant
20  told the UCE that he did "some [work] with classified, but like I
21  told you, it's almost impossible to get anything out of that room."
22  When asked what information he thought would be most useful,
23  defendant replied that knowing how a unit is put together would be
24  most helpful, because "if you were trying to pick up on our
25  transmissions, then you would know how the unit is put together and
26  have an idea on maybe how to intercept the signal."

27         l.   Defendant described WGS as the "primary communication
28  channel" between military personnel.  He also noted other programs to

13

1  which he could try to get access, and he stated that he is aware of

2  when military satellites launch. Defendant further stated that

3  "[e]verything that we have is going to be governed by ITAR."

4          m.    Defendant gave the UCE a USB thumb drive containing

5  files defendant had transferred from Cleared Contractor A's computer

6  network that defendant described as containing some WGS and Tracking

7  and Data Relay Satellite ("TDRS") material. The UCE gave defendant

8  $1,000 in cash.

9          n.    Specifically, defendant transferred Trade Secrets 1-4

10 from Cleared Contractor A's computer network to a USB thumb drive on

11 or about March 2, 2016 before providing them to the UCE on this thumb

12 drive on March 4, 2016. Defendant knew that Trade Secrets 1-4 were

13 trade secrets and were on the USML subject to the ITAR. Defendant

14 did and intended to provide Trade Secrets 1-4 to the UCE, a person

15 whom he believed was a foreign agent that operated on behalf of the

16 Russian government, and whom defendant intended would disclose them

17 to foreign persons and export them from the United States,

18 specifically to Russia. Defendant also knew and intended that his

19 providing Trade Secrets 1-4 would benefit the Russian government, and

20 defendant knew that providing Trade Secrets 1-4 to an agent of a

21 Russian intelligence service and the Russian government was illegal.

22          o.    Fourth Meeting on April 8, 2016: Defendant and the

23 UCE met on April 8, 2016. At that meeting, defendant described ITAR

24 and export control to the UCE, and also stated that a designation as

25 "proprietary" related to "who owns the information." Defendant and

26 the UCE reviewed together printed copies of documents that defendant

27 had previously provided to the UCE on a thumb drive, and defendant

28 explained why he thought the WGS and GPS information would be useful

                                14

1   to the UCE, including by pointing out where a camera was located on a
2   GPS satellite schematic, and confirmed that all of the GPS
3   information was current.  Defendant also told the UCE about a certain
4   component of the WGS system that was classified and stated that U.S.
5   allies would likely not have access to this system.  Defendant
6   provided a handwritten document on that component and offered to
7   obtain schematics for it.
8        p.   Defendant gave the UCE a USB thumb drive containing
9   files defendant had transferred from Cleared Contractor A's computer
10  network, stating that it like the last USB thumb drive he provided
11  contained mostly WGS along with some TDRS information, and the UCE
12  provided defendant with $1,000 in cash.  Defendant further described
13  himself as "risk averse" and stated that he had not contacted any
14  other countries and that he did not go to any embassies.  Defendant
15  and the UCE described how they wanted to try to build the type of
16  relationship depicted in the TV show "The Americans."
17       q.   Fifth Meeting on May 12, 2016:  After telephone calls
18  arranging the meeting, defendant met with the UCE on May 12, 2016, at
19  which time defendant advised that he had done some research on export
20  control and ITAR and explained further details regarding the
21  applicable regulations.  Defendant also provided the UCE with a
22  PowerPoint training presentation on export controls that defendant
23  had transferred from Cleared Contractor A's computer system.
24       r.   Defendant explained that he had selected the sensitive
25  classified component he referenced at their previous meeting because
26  it was usually covered up, and he had been able to access it.
27  Defendant also noted that he had brought schematics for how it was
28  built, explaining that it would allow the UCE's associates to build

1   and test it themselves.  Defendant stated that he had by now provided

2   all the relevant schematics (apart from the actual container, which

3   he described as unimportant).  Defendant described the component as

4   "sensitive," stating that, "[t]his is a backdoor for the government

5   to get in and take control of the spacecraft."  Defendant also noted,

6   "[i]f you control the [the component], you can turn off the satellite

7   and shut down communications.  If you control [a second component],

8   you can intercept communications, and maybe even substitute

9   communications."  Defendant gave the UCE a USB thumb drive containing

10  files defendant had transferred from Cleared Contractor A's computer

11  network, and the UCE gave defendant $1,000 in cash.

12          s.   Sixth Meeting on July 7, 2016:  After telephone calls

13  arranging the meeting, defendant and the UCE met on July 7, 2016.

14  Defendant told the UCE that he had found out by accident that he now

15  has "unrestricted badge access to a DoD system test control room"

16  containing the computers used for testing military spacecraft.

17  Defendant stated that although he did not have logon access, if the

18  UCE could provide him with the technology to do it, he would be

19  willing to plug in a portable hard drive to copy information from it.

20  Defendant stated that this information would allow one to communicate

21  with the satellites, and to get past the hardware encryption.

22          t.   Defendant further offered to take the UCE on a tour of

23  his work facility, which would allow the UCE to see the "entire

24  commercial production side" where GPS, WGS, and all military

25  spacecraft are built.  Defendant stated that no photography was

26  allowed, but that if the UCE brought glasses that could take

27  pictures, he could circumvent that rule.

28

                                    16

1        u.   Defendant brought a thumb drive to the meeting
2  containing files defendant had transferred from Cleared Contractor
3  A's computer network.  .

4        v.   Defendant sent via Fed Ex all of the cash that
5  defendant obtained from the UCE at their meetings on February 26,
6  2016, March 16, 2016, and April 13, 2016 to a person using the name
7  "Chay," which Fed Ex shipments were part of a total of at least
8  $21,420 in at least twenty-two Fed Ex shipments of cash between
9  December 10, 2015 and May 6, 2016.

10       w.   The cost of development of Trade Secrets 1-4 was an
11  amount more than $1.5 million and no more than $3.5 million.

12                           SENTENCING FACTORS

13    15.  Defendant understands that in determining defendant's
14  sentence the Court is required to calculate the applicable Sentencing
15  Guidelines range and to consider that range, possible departures
16  under the Sentencing Guidelines, and the other sentencing factors set
17  forth in 18 U.S.C. § 3553(a).  Defendant understands that the
18  Sentencing Guidelines are advisory only, that defendant cannot have
19  any expectation of receiving a sentence within the calculated
20  Sentencing Guidelines range, and that after considering the
21  Sentencing Guidelines and the other § 3553(a) factors, the Court will
22  be free to exercise its discretion to impose any sentence it finds
23  appropriate up to the maximum set by statute for the crimes of
24  conviction.

25    16.  Defendant and the USAO agree to the following applicable
26  Sentencing Guidelines factors:

27

28

a.   The first offense to which defendant pled guilty is attempting to commit economic espionage, to which the parties agree on the following Guidelines:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| Misappropriation of Trade Section Knowing and Intending Foreign Government/Agent/ Instrumentality Would Benefit | +4 | [U.S.S.G. § 2B1.1(b)(13)(B)] |
| Loss Amount of more than $1.5 million and up to $3.5 million | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |

i.   The parties do not agree as to whether the enhancement applies under U.S.S.G. § 2B1.1(b)(15(A), which applies when defendant's offense conduct involved the conscious or reckless risk of death or serious bodily injury.  Defendant contests its application, and understands that the government will argue that this enhancement applies and will submit evidence to the court support the facts necessary for its application.

b.   The second offense to which defendant is pleading guilty is attempting to violate AECA, Title 22, United States Code, Section 2778(b)(2), (c), and the ITAR, 22 C.F.R. § 127.1(a), (e), to which the parties agree the following Guidelines apply:

| | | |
|---|---|---|
| Base Offense Level: | 26 | [U.S.S.G. § 2M5.2(a)(1)] |

17.   Defendant and the USAO also agree that a two-level adjustment applies because of defendant's abuse of his position of trust pursuant to U.S.S.G. § 3B1.3.

18.   The parties agree that the two offenses group with each other for purposes of calculating the advisory Guidelines range pursuant to U.S.S.G. § 3D1.2(a) and § 3D1.2(b).  Therefore the parties agree that the offense level applicable to the single group

18

1   is the offense level applicable to whichever of the two objects of

2   the conspiracy that is higher, pursuant to U.S.S.G. § 3D1.3(a).  The

3   maximum offense level that therefore results from this agreement,

4   should the government recommend the reduction of three levels

5   provided in paragraph 3.c, is 27.

6        19.  Aside from the specific Guidelines provisions discussed

7   above and herein, defendant and the USAO agree not to seek, argue, or

8   suggest in any way, either orally or in writing, that any other

9   specific offense characteristics, adjustments, or departures relating

10  to the offense level be imposed.  Defendant agrees, however, that if,

11  after signing this agreement but prior to sentencing, defendant were

12  to commit an act, or the USAO were to discover a previously

13  undiscovered act committed by defendant prior to signing this

14  agreement, which act, in the judgment of the USAO, constituted

15  obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the

16  USAO would be free to seek the enhancement set forth in that section.

17       20.  Defendant understands that there is no agreement as to

18  defendant's criminal history or criminal history category.

19       21.  Defendant understands that there is no agreement as to the

20  application or amount of any restitution to any victim.

21       22.  Except as provided in paragraph 3.e, defendant and the USAO

22  reserve the right to argue for a sentence outside the sentencing

23  range established by the Sentencing Guidelines based on the factors

24  set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and

25  (a)(7).

26                  WAIVER OF CONSTITUTIONAL RIGHTS

27       23.  Defendant understands that by pleading guilty, defendant

28  gives up the following rights:

19

1      a.   The right to persist in a plea of not guilty.

2      b.   The right to a speedy and public trial by jury.

3      c.   The right to be represented by counsel -- and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

      f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF RETURN OF DIGITAL DATA

24.  Understanding that the government has in its possession digital devices and/or digital media both seized from defendant and provided by the defendant to the UCE, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete

1  all digital data from those digital devices and/or digital media
2  before they are returned to defendant.

### WAIVER OF APPEAL OF CONVICTION

4      25.  Defendant understands that, with the exception of an appeal
5  based on a claim that defendant's guilty pleas were involuntary, by
6  pleading guilty defendant is waiving and giving up any right to
7  appeal defendant's convictions on the offenses to which defendant is
8  pleading guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

10     26.  Defendant agrees that, provided the Court imposes a total
11 term of imprisonment on all counts of conviction of no more than 87
12 months, defendant gives up the right to appeal all of the following:
13 (a) the procedures and calculations used to determine and impose any
14 portion of the sentence, with the exception of the Court's
15 calculation of defendant's criminal history category; (b) the term of
16 imprisonment imposed by the Court; (c) the fine imposed by the court,
17 provided it is within the statutory maximum; (d) the term of
18 probation or supervised release imposed by the Court, provided it is
19 within the statutory maximum; and (e) any of the following conditions
20 of probation or supervised release imposed by the Court: the
21 conditions set forth in General Orders 318, 01-05, and/or 05-02 of
22 this Court; the drug testing conditions mandated by 18 U.S.C.
23 §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions
24 authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation
25 or supervised release agreed to by defendant in paragraph 2 above.
26     27.  The USAO agrees that, provided (a) all portions of the
27 sentence are at or below the statutory maximum specified above and
28 (b) the Court imposes a term of imprisonment of no less than 70

months, the USAO gives up its right to appeal any portion of the
sentence.

WAIVER OF COLLATERAL ATTACK

28.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

RESULT OF WITHDRAWAL OF GUILTY PLEA

29.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

30.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to

22

1   resentence defendant on any remaining count of conviction, with both
2   the USAO and defendant being released from any stipulations regarding
3   sentencing contained in this agreement, (b) ask the Court to void the
4   entire plea agreement and vacate defendant's guilty plea on any
5   remaining count of conviction, with both the USAO and defendant being
6   released from all their obligations under this agreement, or
7   (c) leave defendant's remaining conviction, sentence, and plea
8   agreement intact. Defendant agrees that the choice among these three
9   options rests in the exclusive discretion of the USAO.

10                    EFFECTIVE DATE OF AGREEMENT

11       31.  This agreement is effective upon signature and execution of
12  all required certifications by defendant, defendant's counsel, and an
13  Assistant United States Attorney.

14                      BREACH OF AGREEMENT

15       32.  Defendant agrees that if defendant, at any time after the
16  signature of this agreement and execution of all required
17  certifications by defendant, defendant's counsel, and an Assistant
18  United States Attorney, knowingly violates or fails to perform any of
19  defendant's obligations under this agreement ("a breach"), the USAO
20  may declare this agreement breached.  All of defendant's obligations
21  are material, a single breach of this agreement is sufficient for the
22  USAO to declare a breach, and defendant shall not be deemed to have
23  cured a breach without the express agreement of the USAO in writing.
24  If the USAO declares this agreement breached, and the Court finds
25  such a breach to have occurred, then:  (a) if defendant has
26  previously entered guilty pleas pursuant to this agreement, defendant
27  will not be able to withdraw the guilty pleas, and (b) the USAO will
28  be relieved of all its obligations under this agreement.

                                  23

1    33.   Following the Court's finding of a knowing breach of this
2  agreement by defendant, should the USAO choose to pursue any charge
3  that was either dismissed or not filed as a result of this agreement,
4  then:

5         a.   Defendant agrees that any applicable statute of
6  limitations is tolled between the date of defendant's signing of this
7  agreement and the filing commencing any such action.

8         b.   Defendant waives and gives up all defenses based on
9  the statute of limitations, any claim of pre-indictment delay, or any
10 speedy trial claim with respect to any such action, except to the
11 extent that such defenses existed as of the date of defendant's
12 signing this agreement.

13        c.   Defendant agrees that: (i) any statements made by
14 defendant, under oath, at the guilty plea hearing (if such a hearing
15 occurred prior to the breach); (ii) the agreed to factual basis
16 statement in this agreement; and (iii) any evidence derived from such
17 statements, shall be admissible against defendant in any such action
18 against defendant, and defendant waives and gives up any claim under
19 the United States Constitution, any statute, Rule 410 of the Federal
20 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
21 Procedure, or any other federal rule, that the statements or any
22 evidence derived from the statements should be suppressed or are
23 inadmissible.

24                    COURT AND PROBATION OFFICE NOT PARTIES

25        34.   Defendant understands that the Court and the United States
26 Probation Office are not parties to this agreement and need not
27 accept any of the USAO's sentencing recommendations or the parties'
28 agreements to facts or sentencing factors.

                                    24

25

35. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

36. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

37. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO

25

1  and defendant or defendant's attorney, and that no additional

2  promise, understanding, or agreement may be entered into unless in a

3  writing signed by all parties or on the record in court.

4  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

5      38.  The parties agree that this agreement will be considered

6  part of the record of defendant's guilty plea hearing as if the

7  entire agreement had been read into the record of the proceeding.

8  AGREED AND ACCEPTED

9  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
10 CALIFORNIA

11 SANDRA R. BROWN
   Acting United States Attorney

12

13 _____          April 26, 2017
                                        Date
14 ANTHONY J. LEWIS
   MELISSA MILLS
15 Assistant United States Attorneys

   _____          04/21/2017
16 GREGORY ALLEN JUSTICE                 Date
   Defendant
17                                       4-21-17
   _____          Date
18 KELLEY LANE MUÑOZ
   Attorney for Defendant
19 Gregory Allen Justice

20

21

22 CERTIFICATION OF DEFENDANT

23     I have read this agreement in its entirety.  I have had enough

24 time to review and consider this agreement, and I have carefully and

   thoroughly discussed every part of it with my attorney.  I understand
25
   the terms of this agreement, and I voluntarily agree to those terms.
26
   I have discussed the evidence with my attorney, and my attorney has
27
   advised me of my rights, of possible pretrial motions that might be
28

26

1  filed, of possible defenses that might be asserted either prior to or
2  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
3  of relevant Sentencing Guidelines provisions, and of the consequences
4  of entering into this agreement. No promises, inducements, or
5  representations of any kind have been made to me other than those
6  contained in this agreement. No one has threatened or forced me in
7  any way to enter into this agreement. I am satisfied with the
8  representation of my attorney in this matter, and I am pleading
9  guilty because I am guilty of the charges and wish to take advantage
10 of the promises set forth in this agreement, and not for any other
11 reason.

GREGORY ALLEN JUSTICE                    04/21/2017
Defendant                                Date

27

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Gregory Allen Justice's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

KELLEY LANE MUÑOZ
Attorney for Defendant
Gregory Allen Justice

4-21-17
Date